UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JAMES GARY JR** | **CASE NO. 2:24-CV-01171** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **INDEMNITY INSURANCE CO OF NORTH AMERICA ET AL** | **MAGISTRATE JUDGE LEBLANC** |

**REPORT AND RECOMMENDATION**

Before the court is a motion to remand filed by plaintiff James Gary, Jr. Doc. 9. The motion is opposed [doc. 12], and the movant has filed a reply [doc. 13], making the motion ripe for ruling. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

After careful consideration of this motion and the applicable law, for the reasons that follow, **IT IS RECOMMENDED** that the motion be **GRANTED** and that this matter be remanded to the state court from which it was removed.

I.
BACKGROUND

Plaintiff filed the action styled *James Gary, Jr. v. Indemnity Insurance Co. of North America, et al.*, in the 14th Judicial Court for Calcasieu Parish, Louisiana, bearing docket no. 2023-3251B, on August 28, 2023. Doc. 1, att. 1. The petition alleges that on or about November 18, 2022, plaintiff James Gary, Jr. ("Gary") was travelling westbound in a vehicle in Calcasieu Parish, Louisiana, when a westbound tractor-trailer operated by Aymen Alomar entered his lane of travel, striking the passenger side of his vehicle. Gary alleges he sustained injuries to his mind and body as a result of the collision, including medical expenses, pain and suffering, loss of enjoyment of

1

life, and impaired earning capacity, and he prays for reasonable compensatory and other damages. Doc. 1, att. 1, pp. 1–2. Named as defendants were Aymen Alomar ("Alomar") as driver of the tractor-trailer and A&F Logistics, Inc. ("A&F") as the owner and/or lessor of the tractor-trailer. Gary also named two insurers as defendants: Indemnity Insurance Co. of North America ("Indemnity Insurance") and Louisiana Farm Bureau Insurance Co. ("Farm Bureau"). *Id.* at 2–4. The petition alleges that Indemnity Insurance issued a policy insuring and indemnifying A&F and Alomar against such liability as is asserted in the petition [*id.* at 2], and that Farm Bureau issued an uninsured/underinsured motorist ("UM") policy covering Gary. *Id.* at 4. The petition asserts that Gary will show that "A&F Logistics, Inc. and/or Aymen Alomar has a basis for uninsured/underinsured status." The petition also makes alternative allegations, should the court find breach of the UM policy necessary to state a claim, that Farm Bureau is in breach of the policy for failing to adequately respond to demand for payment and/or in anticipatory breach of contract by virtue of such inadequate response. *Id.*

Just shy of one year after Gary filed suit, defendants Indemnity Insurance, A&F, and Alomar ("Removing Defendants") removed the matter to this court under 28 U.S.C. §§ 1332, 1441 & 1446. Doc. 1. The removal is predicated on the theory that non-diverse home-state defendant Farm Bureau was improperly joined as a defendant and that Farm Bureau's citizenship can be disregarded for the purposes of assessing this court's jurisdiction under 28 U.S.C. § 1332.

Removing Defendants assert that testimony from Gary's July 31, 2024, deposition shows that his damages will be considerably less than the value of the $1,000,000 policy issued by Indemnity Insurance. Accordingly, Removing Defendants argue that there can be no reasonable basis to infer that Gary could recover under the UM policy issued by Farm Bureau. Doc. 1, p. 2, 7–9. Specifically, Removing Defendants propose that Gary's testimony establishes that his neck

2

injuries have resolved, surgery for his back is not currently contemplated, and his only claim for lost wages was limited to two days' paid time off. *Id.* at 5. In his motion to remand, Gary points out that he has pled a valid cause of action against Farm Bureau and that the facial validity of his claim is not challenged. Doc. 9. He also asserts that he is still treating for spinal injury, his physician has not yet ruled out surgery, and the long-term medical expenses—especially if spinal surgery and a life-care plan are involved—could exceed $1,000,000. Doc. 9, att. 1, p. 10. He requests remand of this matter on the basis that non-diverse defendant Farm Bureau is therefore a proper party who may bear some liability for his damages.

## II.
### APPLICABLE LAW

Any civil action brought in a state court of which the federal district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over any civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity of citizenship among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The removing party bears the burden of showing that removal was proper and that federal jurisdiction exists. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). The removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). In diversity removals, the action is not removable "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an

3

"inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). Only the latter method is relevant here, insofar as Removing Defendants did not allege actual fraud in the pleading of jurisdictional facts. Thus, the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. "[T]here must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross v. CitiFinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (emphasis in original) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)).

The burden of persuasion to show improper joinder is a "heavy one." *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009); *see also B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981). All allegations are evaluated in the "light most favorable to the plaintiff, resolving all contested issues of substantive fact" and ambiguities of law in the plaintiff's favor. *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). A court should "not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so." *Id.* at 308–09.

When considering an improper-joinder claim, courts first "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and find generally no improper joinder if plaintiff can survive such a challenge. *Smallwood*, 385 F.3d at 573. If plaintiff has

4

stated a claim but has "misstated or omitted discrete facts that would determine the propriety of joinder," the court has the discretion to "pierce the pleadings." *Id.* The court would then consider "summary judgment-type evidence such as affidavits and deposition testimony" to determine the propriety of the contested joinder. *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995). This type of summary inquiry is only performed in "limited circumstances[.]" *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021). The burden remains with the party asserting improper joinder throughout this analysis. *Mumfrey*, 719 F.3d at 402.

### III.
#### DISCUSSION

As Gary points out, Removing Defendants have not asserted that Gary's petition lacks a valid state law cause of action against Farm Bureau. Rather, Removing Defendants argue that summary-judgment style evidence now shows that Gary cannot reasonably be expected to recover against non-diverse defendant Farm Bureau, revealing Farm Bureau to be a nominal, improperly joined party. This argument bypasses the first step in the *Smallwood* analysis, in which courts first "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and ordinarily find no improper joinder if plaintiff can survive such a challenge. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). The Removing Defendants instead assume that the court will exercise its discretion to pierce the pleadings and conduct a limited summary inquiry, without giving the court a sufficient justification to exercise that discretion. In the absence of any argument that Gary fails to state a claim against Farm Bureau, the court finds that the first step of the *Smallwood* analysis is satisfied and that the petition would survive a Rule 12(b)(6) challenge as to Gary's claims against Farm Bureau.

The *Smallwood* analysis directs the court to pierce the pleading on finding misstatements or omissions of discrete facts that would preclude recovery against the non-diverse defendant, but Removing Defendants point us to no misstatement or omission of discrete fact that would justify piercing the pleadings. *See, e.g.*, *Rolls on behalf of A. R. v. Packaging Corp. of Am. Inc.*, 34 F.4th 431, 436 (5th Cir. 2022) (approving piercing pleadings to consider evidence that non-diverse defendant was not present on the day of the accident and had no knowledge of the risks to which he allegedly exposed plaintiff). Defendants offer Gary's deposition testimony as evidence that most of his complaints are resolved or are resolving and should place his overall damages at less than $1,000,000, but this is not the sort of discrete factual omission that would justify piercing the pleadings to determine that Farm Bureau is improperly joined.

There is insufficient basis to pierce the pleadings here because Gary's deposition testimony does very little to pin down the upper limit of his medical damages. The testimony supports his position that he is still treating for lower back complaints and that it is unclear whether surgery will be needed in the future, making his medical damages an unknown at this time. In the deposition, Gary describes treating with Dr. Burton for burning in his thighs and tightness in his lower back. Doc. 1, att. 2, pp. 66-67. He testifies that Dr. Burton had elected a course of shots to see if that would correct his problems before proceeding to surgery. *Id.* at. 68. He describes Dr. Burton giving him a series of epidural steroid shots, with another shot contemplated near in time to the date of his deposition. Doc. 1, att. 2, pp. 68-74. Beyond recalling that Dr. Burton discussed the possibility of back surgery with him, he is unable to give details about what the surgery would entail, other than Dr. Burton's assurance that it would be less invasive than procedures used 30 years ago. *Id.* at 77-78.

In short, before the court is an unsurprising fact dispute about the ultimate value of plaintiff's damage award and competing interpretations about what the plaintiff's testimony signifies with regard to his long-term medical prognosis. It would be inappropriate for this court to predetermine the likely value of that award on the limited evidence before it. "Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

The Removing Defendants cite to the decision in *Boutin v. United Specialty Ins. Co.* for the proposition that the district judge has remanded a case on similar facts. *Boutin v. United Specialty Ins. Co.*, No. CV 20-1049, 2020 WL 7488307 (W.D. La. Dec. 14, 2020), *report and recommendation adopted,* No. 6:20-CV-01049, 2021 WL 67710 (W.D. La. Jan. 7, 2021). Like this case, *Boutin* involved a $1,000,000 primary liability policy and non-diverse UM provider Farm Bureau. In *Boutin*, however, the range of plaintiffs' possible damages had been narrowed to a greater degree than in this matter. In *Boutin*, before filing suit, plaintiffs' counsel had contacted the primary insurer as to settlement of both unresolved claims: as to one plaintiff, the pre-suit settlement demand was $136,955.85; as to the other, counsel made a request for settlement offers, noting medical expenses totaling $16,276.00. *Id.* at *2. Based on the settlement demand letters, removing defendants argued that each plaintiff's claim could reliably be valued at $150,000 or less, leaving the insurer's potential exposure far less than the $1,000,000 figure that would be needed to trigger UM coverage. *Id.* In determining that Farm Bureau should be dismissed, the *Boutin* court discussed those settlement demand letters as an "honest assessment of the value of plaintiffs' claims," alongside a detailed quantum study provided by the removing defendants. *Id.* at *4. Lacking analogous settlement demand letters and quantum studies, this court cannot estimate the value of Gary's claims with the same degree of confidence as did the *Boutin* court.

7

Accordingly, it is recommended that Farm Bureau is properly joined, destroys diversity, and that this matter be remanded.

Additionally, as a prerequisite to the exercise of this court's diversity jurisdiction, the citizenship allegations in the record would need to be adequate to satisfy the court that the other parties are, in fact, of diverse citizenship. Courts have an "independent obligation to assess our own jurisdiction before exercising the judicial power of the United States." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019). Accordingly, the court issued a Notice of Diversity Jurisdiction Disclosure Statement requirement, informing the parties that all parties who have made an appearance in the originating court, including the plaintiffs, must file a diversity jurisdiction disclosure statement. Doc. 6. No party complied with this notice.

While there appears no dispute that plaintiff Gary and defendant Farm Bureau are both Louisiana citizens (thereby destroying diversity), the citizenship allegations as to certain defendants are inadequate to allow the court to perform the jurisdictional assessment required by 28 U.S.C. § 1332.

Specifically, Removing Defendants allege that Indemnity Insurance Co. of North America and Louisiana Farm Bureau Casualty Insurance Co. are a Pennsylvania "company" and Louisiana "company," respectively. Doc. 1, p. 6. There are different rules for determining the citizenship of corporations[1] versus unincorporated entities such as limited liability companies or partnerships.[2] When the citizenship allegation merely designates an entity as a "company," it is unclear which

---

[1] For diversity purposes, a corporation is a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332; *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181 (2010).

[2] For diversity purposes, an unincorporated association's citizenship is determined by the citizenship of all its partners or members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008). If the partners themselves are limited liability companies or other entities, "their citizenship must be alleged in accordance with the rules applicable to that entity, and the citizenship must be traced through however many layers of members or partners there may be." *Rodidaco, Inc. v. Chesapeake Energy La. Corp.*, No. 18-cv-0316, 2018 WL 3551525 at *1 (W.D. La. July 24, 2018).

rule applies, and the analysis cannot proceed. In addition, A&F is identified as a Michigan corporation, but its principal place of business is not identified, making its citizenship uncertain. Doc. 1, p. 6. Defects in jurisdictional allegations may be cured on amendment. 28 U.S.C. § 1653. The court would order such amendment, were the court persuaded that the motion to remand should otherwise be denied.

## III.
### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that the Motion to Remand [doc. 9] be **GRANTED** and that the case be **REMANDED** to the 14th Judicial District Court, Calcasieu Parish, Louisiana.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers this this 29th day of September, 2025.

_____
**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**